IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ATLANTIC WASTE SERVICES,      )
INC.,                         )
                              )
        Plaintiff,            )
                              )
v.                            )    CASE NO. CV414-211
                              )
MACK TRUCKS, INC.,            )
                              )
        Defendant.            )
_____)

## O R D E R

Before the Court is Defendant Mack Truck, Inc.'s Motion for Summary Judgment. (Doc. 19.) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**. As a result, Plaintiff's claims for breach of the express warranties will proceed to trial. However, Defendant is entitled to summary judgment with respect to Plaintiff's claims for breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability. Finally, Plaintiff is precluded from seeking incidental and consequential damages as the result of Defendant's alleged breach of the express warranties.

## BACKGROUND

This case stems from Plaintiff Atlantic Waste Services, Inc.'s purchase of three trucks manufactured by Defendant Mack Truck, Inc.[1] (Doc. 21 at 1.) Plaintiff is a refuse-collection company that utilizes large, front-end loading garbage trucks to empty dumpsters located at commercial establishments. (Id. at 3.) In 2008 and 2009, Plaintiff purchased three trucks from a third-party dealer for use in Plaintiff's commercial refuse collection business.[2] (Doc. 22 ¶¶ 4-5.) Plaintiff identifies the trucks as Unit-26, Unit-27, and Unit-28. (Id. ¶ 5.) With respect to these trucks, Defendant manufactured the truck chassis, which included the engine and exhaust system. (Id. ¶ 22.) A separate entity outfitted the trucks for their use in refuse collection. (Id.) Each truck included a spark-fired regeneration system designed to filter toxic substances from its exhaust. (Doc. 21 at 6.) According to Plaintiff, the regeneration systems suffered from numerous problems that would eventually lead to the trucks completely shutting down. (Id. at 8.)

---

[1] For the purposes of ruling on Defendant's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

[2] Plaintiff purchased two trucks in 2008 and one truck in 2009. (Doc. 22 ¶¶ 4-5.)

Defendant warranted the vehicles for 12 months or 100,000 miles, and the emissions systems for 60 months or 100,000 miles. (Doc. 22 ¶ 36.) The vehicle warranty provided that

> Mack Trucks, Inc. (the "Manufacturer") warrants each new MACK motor vehicle (the "Vehicle") . . . to be free from defects in material or workmanship under normal use and service, its obligation under this warranty being limited to repairing or replacing, as hereinafter provided, at its option, at the Manufacturer's authorized truck repair facility any part or parts of the Vehicle found to the Manufacturer's satisfaction to be defective.

(Id. ¶ 35.) The emission warranty[3] stated that

> Mack Trucks, Inc.'s obligations under this warranty is limited to the repair or replacement, at Mack Truck's option, of any part(s) of the Emission Control Systems of such engine and/or vehicle found to be defective upon examination by Mack.

(Id. ¶ 37.) In addition, both warranties expressly excluded "any implied warranty of merchantability or fitness for a particular purpose, and of any other obligation on the part of the manufacturer, including, without limitation of the foregoing, consequential and incidental damage." (Id. ¶ 40; accord ¶¶ 41-43.)

---

[3] The quoted language is the warranty covering Unit-26 and Unit-27. (Doc. 22 ¶ 37.) While the language of the warranty for Unit-28 was slightly different (id. ¶¶ 37, 38), the interpretation of both provisions is identical with respect to their limitations and exclusions.

3

Plaintiff alleges that it began having problems with the trucks' regeneration systems soon after they were placed in service. (Doc. 21 at 11.) Plaintiff presented Unit-26 to an authorized Mack Service Center for repair under the emission warranty a total of five times during the warranty period. (Doc. 19, Attach. 1 at 13.) Unit-27 was presented only once, while Unit-28 was presented four times. (Id.) According to the local Mack authorized service technician, other customers encountered similar problems with the regeneration system. (Doc. 21, Attach. A 64:10-16.) In addition, the technician stated that he did not believe Plaintiff's issues with the regeneration systems were resolved by any repairs performed during the warranty period. (Id. 64:17-21.)

After the warranties expired, Plaintiff routinely returned the trucks to the authorized technician for issues related to the regeneration systems. (Doc. 21 at 12-13.) Ultimately, Plaintiff disposed of all three trucks, selling Unit-27 and Unit-28 to another waste disposal company for $100,000 and $80,000, respectively. (Doc. 22 ¶¶ 10, 13.) Unit-26 was destroyed in a fire, resulting in an insurance payment of $130,000. (Doc. 22 ¶ 7.)

Based on the trucks' poor service history, Plaintiff filed a complaint in the State Court of Chatham County.

(Doc. 1, Ex. A.) Defendant timely removed the complaint to this Court, pursuant to 28 U.S.C. § 1332, based on the diversity of the parties. (Doc. 1.) In the complaint, Plaintiff alleges claims for breach of express warranty (id., Ex. A ¶¶ 33-38), breach of the implied warranty of fitness for a particular purpose (id. ¶¶ 39-47), and breach of the implied warranty of merchantability (id. ¶¶ 48-56). Plaintiff seeks actual, incidental, and consequential damages (id. ¶¶ 27-29, 47, 56), as well as attorney's fees and costs (id. ¶¶ 57-59).

Following discovery, Defendant filed its Motion for Summary Judgment. In its motion, Defendant argues that it did not breach the express warranties because Defendant successfully remedied any problems with the regeneration systems each time Plaintiff presented a truck for repair. (Doc. 19, Attach. 1 at 11-17.) In addition, Defendant contends that the language of the express warranties specifically disclaims any implied warranties of fitness for a particular purpose and merchantability, and limits Defendant's liability to repair or replacement. (Id. at 17-21.) According to Defendant, Plaintiff's implied warranty claims also fail due to the lack of privity between it and Defendant. (Id. at 23-24.) Finally, Defendant maintains that Plaintiff has failed to point to competent evidence in

5

the record establishing any measure of damages. (Id. at 22-23.)

In response, Plaintiff argues that Defendant breached the express warranties because Defendant was provided reasonable opportunities to repair the faulty regeneration systems, but failed to successfully remedy the systems' performance issues. (Doc. 21 at 15-19.) Also, Plaintiff contends that the express warranties failed of their essential purpose, entitling it to the protections of the implied warranties of fitness for a particular purpose and merchantability, along with incidental and consequential damages. (Id. at 19-22.) In addition, Plaintiff reasons that the express warranties provided by Defendant establish the requisite privity necessary to maintain actions for breach of the implied warranties of fitness and merchantability. (Id. at 22-23.) Finally, Plaintiff states that the record contains evidence sufficient to support an award of damages. (Id. at 23-24.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted

6

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that

7

there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

## II. BREACH OF THE EXPRESS WARRANTIES

Defendant argues that it did not breach the express warranties because it successfully repaired the regeneration systems each time Plaintiff presented a truck for repair. (Doc. 19, Attach. 1 at 14-17.) Before a defendant can be considered in breach of an express

8

warranty that limits liability to repair or replacement of the defective part, the plaintiff must have provided the defendant with both notice of the alleged defect and a reasonable opportunity for repair. McDonald v. Mazda Motors of Am., Inc., 269 Ga. App. 62, 65, 603 S.E.2d 456, 460 (2004). It is only upon a defendant's refusal or failure to remedy the defect that it becomes liable for a breach of the express warranty. Id. at 65-66, 603 S.E.2d at 460 (" '[I]t is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty.' " (quoting Ford Motor Co. v. Gunn, 123 Ga. App. 550, 551, 181 S.E.2d 694, 696 (1971))). This conclusion rests on the notion that "if the defect can be cured, then the purchaser has received what he bargained for under the terms of the warranty—a product that would pass in the trade." Id. at 66, 603 S.E.2d at 460. Generally, whether a defendant refused or was unable to repair a defect is a factual determination left to the exclusive province of the jury. Id. at 67, 603 S.E.2d at 461 (citing Mulkey v. Gen. Motors Corp., 164 Ga. App. 752, 753, 299 S.E.2d 48 (1982)).

In this case, Plaintiff has identified enough evidence
in the record that would permit a reasonable jury to
conclude Defendant breached the express warranties. First,
there is evidence in the record that Plaintiff presented
each truck to Defendant for warranty repair. Defendant
concedes that Unit-26 was presented for repair five times,
Unit-27 once, and Unit-28 four. (Doc. 19, Attach. 1 at 13.)
Moreover, Plaintiff points to evidence in the record
suggesting that Plaintiff attempted to repair the system by
using its in-house technicians, who received assistance and
direction from the authorized technician. (Doc. 21 at 16.)
On at least two occasions, the authorized technician
travelled to Plaintiff's facility to service the
regeneration systems. (Id.) These efforts failed to produce
an official paper trail of a truck being "presented" for
repair. However, this Court is unaware of any legal
authority requiring a high degree of formality such that
the parties' combined efforts cannot be considered a
reasonable opportunity for Defendant to repair the
regeneration system. The Court is simply unwilling to

ignore the alleged substantial efforts undertaken by Plaintiff in its attempt to keep the trucks in service.

Second, the record contains evidence that Defendant failed to repair the alleged defective regeneration system. Plaintiff has identified numerous attempts to repair the regeneration system following the expiration of the warranty period. (Doc. 21 at 12-13.) Indeed, even Defendant's local authorized technician testified that the regeneration system issues Plaintiff encountered in its trucks were common for those model years, and that the issues with the regeneration systems in Plaintiff's trucks remained unresolved following any repairs performed during the warranty period. (Doc. 21, Attach. A 64:10-21.) Because there is evidence in the record sufficient to raise a question for the jury whether Defendant failed to repair the defective regeneration system, Defendant is not entitled to summary judgment with respect to Plaintiff's claim for breach of the express warranties.

III. APPLICABILITY OF THE IMPLIED WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY

In its Motion for Summary Judgment, Defendant argues[4] that it expressly disclaimed all implied warranties. (Doc. 19, Attach. 1 at 17-19.) Alternatively, Defendant contends that any implied warranties must fail due to a lack of privity between it and Plaintiff. (Id. at 23-24.) Plaintiff responds that it can seek recovery under the implied warranties, despite the disclaimer, because the express warranties failed of their essential purpose. (Doc. 21 at 19-20.) With respect to privity, Plaintiff maintains that the parties are in privity based the existence of the express warranties (id. 22-23).

As an initial matter, Defendant's argument concerning lack of privity can be easily dismissed. In Georgia, implied warranties only run to parties in privity with the party against whom the warranty is being asserted. McQueen v. Minolta Bus. Sol., Inc., 275 Ga. App. 297, 300, 620 S.E.2d 391, 393 (2005). This limitation normally operates to preclude the ultimate consumer of a product from

---

[4] Defendant offers no argument concerning whether it breached the implied warranties, only that they are inapplicable to this case.

asserting implied warranties against a manufacturer. Lee v. Mylan Inc., 806 F. Supp. 2d 1320, 1327 (M.D. Ga. 2011). However, privity of contract exists when a manufacturer, through an authorized dealer, extends an express warranty to the plaintiff. Id. at 1327-28; see also Chrysler Corp. v. Wilson Plumbing Co., 132 Ga. App. 435, 437, 208 S.E.2d 321, 323-24 (1974) (holding that privity of contract exists and implied warranties are applicable "where an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser").

In this case, the parties agree that the trucks were covered under an express warranty. This warranty was extended by Defendant to Plaintiff through an authorized dealer. Accordingly, the parties are in privity of contract, precluding Defendant from avoiding the implied warranties on this ground.

As a result, Defendant's only remaining argument with respect to the implied warranties is that the express warranties did not fail of their essential purpose. Under

O.C.G.A. § 11-2-719, parties to a contract subject to the Uniform Commercial Code ("UCC") may agree to remedies in substitution of those provided under the UCC. This section also provides that the parties may exclude certain types of damages, including incidental and consequential damages. O.C.G.A. § 11-2-719(1)(a). However, "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provision of" the UCC. Id. cmt. n.1.

In this case, there is no evidence that the express warranties failed of their essential purpose. As this Court understands it, the crux of Plaintiff's argument is that it is left without an effective remedy because Defendant was unable or incapable of repairing the regeneration system. (Doc. 21 at 19-20.) This ignores, of course, the possibility that Defendant could have replaced the trucks or system in question. In addition, Plaintiff has the very remedy that it is seeking to enforce in this case: filing suit based on Defendant's alleged breach of the express warranty. See Fedrick v. Mercedes-Benz USA, LLC, 366 F.

Supp. 2d 1190, 1200 (N.D. Ga. 2005); Atlanta Specialty Food Distrib., Inc. v. Watkins Leasing Inc., 1982 WL 139732, at *4 (N.D. Ga. Nov. 8, 1982) (unpublished); Fiat Auto USA, Inc. v. Hollums, 185 Ga. App. 113, 115, 363 S.E.2d 312, 315 (1987). The parties have not identified, and this Court has failed to locate, any Georgia case holding that an express warranty fails of its essential purpose due only to the inability of a party to successfully repair a product defect. Cf. Hightower v. Gen. Motors Corp., 175 Ga. App. 112, 115, 332 S.E.2d 336, 338-39 (1985), overruled on other grounds by Pender v. Witcher, 196 Ga. App. 856, 397 S.E.2d 193 (1990) (noting distinction between "a breach of the limited warranty to repair or replace" and the "defeat of the essential purpose of that limited warranty"). Rather, the more reasonable interpretation of O.C.G.A. § 11-2-719(2) and Georgia case law is that an express warranty only fails of its essential purpose where it leaves a plaintiff with either no remedy or one illusory in nature. While Plaintiff may now be unsatisfied with its available remedy, it must live by the bargain it made with Defendant. Accordingly, Defendant is entitled to summary judgment with

15

respect to Plaintiff's claims for breach of implied
warranties.[5]

IV.  DAMAGES

Plaintiff contends that it should be able to recover
incidental and consequential damages because the express
warranties failed in their essential purpose. (Doc. 21 at
22-23.) Even assuming such failures, however, Plaintiff is
still not entitled to incidental and consequential damages.
Georgia courts have routinely recognized that a breach or
failure of a limited warranty does not negate clauses
excluding specific types of damages. See, e.g., Hightower,
175 Ga. App. at 114, 332 S.E.2d at 338-39 ("The breach or
defeat of a limited warranty to repair or replace, of

---

[5] As part of its argument, Plaintiff grossly misinterprets
Lee v. Mercedez-Benz USA, LLC, 276 Ga. App. 28, 622 S.E.2d
361 (2005), as permitting additional remedies under the UCC
where a seller excludes all limited warranties. (Doc. 21 at
19.) Plaintiff's error appears to stem from its misreading
the phrase "attempting to exclude all express or implied
warranties" to actually mean "attempting to exclude either
all express or all implied warranties." The language in Lee
clearly states that a warranty fails of its essential
purpose where it attempts to exclude all warranties,
whether they are express or implied. See 276 Ga. App. at
29, 622 S.E.2d at 362 ("[O.C.G.A. § 11-2-719(2)] applies in
cases where the seller attempts to exclude all express or
implied warranties."). Therefore, Plaintiff is incorrect in
its understanding that an express warranty automatically
fails of its essential purpose where it excludes all
implied warranties.

16

course, does not simultaneously invalidate other limitations of damages contained in the new car warranty . . . ."); A-larms, Inc. v. Alarms Device Mfg. Co., 165 Ga. App. 382, 386, 300 S.E.2d 311, 314 (1983) ("[C]onsequential damages may be excluded or limited unless such would be unconscionable, and such limitation of damages where the loss is commercial is not prima facie unconscionable.");[6] see also Atlanta Specialty Food, 1982 WL 139732, at *3 ("Where an exclusive remedy fails of its essential purpose it may be ignored but other clauses in the contract which limit remedies may be left to stand or fall independently of the stricken clause."). Under such circumstances, a plaintiff's damages are measured by "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Atlanta Specialty Food, 1982 WL 139732, at *4; accord Hollums, 185 Ga. App. at 115, 363 S.E.2d at 315 (noting limitation of damages in express warranty and measuring damages as "the difference at the time and place of acceptance between the value of the goods accepted and

---

[6] Plaintiff does not argue that the damage exclusions are unconscionable.

17

the value they would have had if they had been as warranted"); see Fedrick, 366 F. Supp. 2d at 1200 ("A plaintiff in a warranty case must show the difference between the fair market value of the vehicle as warranted and its fair market value as delivered in the allegedly defective condition." (citing references omitted)).

In this case, the express warranties exclude liability for incidental and consequential damages. As noted above, this provision remains in force despite either a breach of the express warranties or failures of their essential purpose. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's claims for incidental and consequential damages.

As a final attempt to avoid liability in this case, Defendant contends that Plaintiff has failed to place in the record any competent evidence to support a valuation concerning the trucks. (Doc. 19, Attach. 1 at 22-23.) Defendant appears to base this argument on a failure to "identify any witness who would offer opinion testimony" concerning the issue of damages. (Id. at 22.) Plaintiff, however, points to its Vice President, Ben Wall, Jr., as

competent to testify concerning the value of the trucks both with and without the alleged defects. (Doc. 21 at 23.) According to Plaintiff, Mr. Wall's significant experience purchasing Plaintiff's refuse-collection trucks qualifies him to testify concerning the appropriate measure of damages. (Id.)

After reviewing the record in this case, the Court concludes that Mr. Wall's experience qualifies him to testify concerning the appropriate measure of damages. Contrary to Defendant's belief, expert testimony is not required to ascertain damages in a case such as this. In this respect, Defendant's reliance on the Georgia Court of Appeal's opinion in Fedrick is misplaced. In Fedrick, the court merely determined that the plaintiff, whose experience amounted to that of a mere consumer, was not qualified to testify concerning the value of the warranted vehicle in its defective condition and denied her request for leave to file an expert witness report. 366 F. Supp. at 1195-96. Nothing in that case, or any other cited by Defendant, leads to the inescapable conclusion that expert

testimony is required to prove damages in a breach of warranty case.

Under Georgia law, "the owner of property can be qualified to state an opinion as to value." Monroe v. Hyundai Motor Am., Inc., 270 Ga. App. 477, 478, 606 S.E.2d 894, 896 (2004) (citing Dixon v. Williams, 177 Ga. App. 702, 704, 340 S.E.2d 286 (1986)). Unlike the plaintiff in Fedrick, Mr. Wall is not the occasional purchaser of automobiles in the consumer context, but routinely engages in the buying and selling of refuse-collection vehicles in a commercial setting. Based on this experience, the Court is satisfied that Mr. Wall can offer competent testimony concerning any diminution of the trucks' value based on the alleged defects. Accordingly, Defendant is not entitled to summary judgment on this ground.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. As a result, Plaintiff's claims for breach of express warranty will proceed to trial. However, Defendant is entitled to summary judgment with respect to Plaintiff's claims for

breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability. In addition, Plaintiff is precluded from seeking incidental and consequential damages as the result of Defendant's alleged breach of the express warranty.

SO ORDERED this 25th day of March 2016.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA